THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEFEN HART, Defendant-Appellant.

First District (5th Division)   No. 1—88—1434

Opinion filed May 17, 1991.

514

Randolph N. Stone, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Kathleen Howlett, Special Assistant State's Attorney, and Renee Goldfarb and Lisa Goldsand, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant Stefen Hart (Hart) was charged with criminal sexual assault, aggravated criminal sexual assault, and aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, pars. 12—13, 12—14, 12—15) in connection with an incident that occurred on November 18, 1987, involving M.T., a four-year-old girl. After a bench trial Hart was found guilty on the one count of aggravated criminal sexual abuse and

was sentenced to a term of seven years' imprisonment in the Illinois Department of Corrections. He now brings this appeal contending that there was insufficient credible evidence to prove him guilty beyond a reasonable doubt.

Hart's arguments center around the admission of statements made by the four-year-old victim, M.T., to her mother and the investigating police officer, Officer Mertz. Hart contends that the trial court erred by admitting the statements under either the spontaneous declaration exception to the hearsay rule or the amended version of section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10). We shall first give an account of the evidence which was presented at trial.

Just prior to trial the judge held a hearing in chambers, at which time M.T. was questioned to determine her competency to testify. M.T., who was then five years old, was able to recite her ABC's, count to 10 (omitting the number 8), and identify various objects in court. She knew her name, where she lived, her birthday, and the names of her family members. M.T. also indicated that she knew the difference between a lie and the truth and stated that she would tell the truth. However, she stated that she did not know what it meant to swear to tell the truth and the court questioned whether she could appreciate the moral obligation to tell the truth or comprehend the solemnity of taking an oath. For this reason, the court reserved judgment concerning the competency of the witness and the trial proceeded without a decision being made on whether M.T. would be allowed to testify.

The case then proceeded to trial, and the first witness called was Dr. Villaneuva, a physician at Central Community Hospital. He testified that at about 5:10 p.m. on November 18, 1987, M.T. was brought to the emergency room at the hospital. He stated that M.T. was "scared looking and very quiet" and that she was reluctant to answer any questions. Because of her fear, M.T. permitted a rather limited vaginal examination. However, it appeared that the hymen was not intact and there was a high degree of redness all over her genitalia, including the labia. After the physical examine, swabs were taken for further analysis.

Although Dr. Villaneuva testified that the redness was consistent with abuse, he agreed that it could also be caused by other things. He also did not remember seeing any evidence of blood on the child or her clothing.

The next witness to testify was Dasha T., M.T.'s mother. She testified that on the afternoon of November 18, 1987, she had been lying

down due to a headache. Although she had been unaware that M.T. ever left the apartment, she heard M.T.'s sister, Davora, say to M.T., "Ooh wee, I'm telling mama." Davora then told Dasha that "Eyeball was messing with her (M.T.)." Hearing this, Dasha called M.T. into the room and asked her what Davora meant when she said "messing with" her. She testified that M.T. had tears in her eyes and, at first, would say nothing. Then M.T. told her "he pulled my pants down." At hearing this Dasha became upset and immediately called the police. Although Dasha did not know how long it had been since M.T. returned home from defendant's apartment, she estimated that her conversation with M.T. took place sometime after 3 o'clock in the afternoon.

The next witness to testify was Officer Mertz, who responded to the police call to M.T.'s home at about 4:15 p.m. on November 18, 1987. Officer Mertz stated that upon his arrival he interviewed M.T. outside the presence of her mother. M.T. told him that "Eyeball" (defendant's nickname), who lived next door, had "put his thing in her booty." M.T. explained that "Eyeball" lived in the apartment where her friend "Nay-Nay" lived. When M.T. went over to her friend's home to ask her to play, Eyeball told her that Nay-Nay wasn't home but that she could come in. He offered her a piece of "turtle" candy and she entered the apartment.

M.T. told Officer Mertz that once she was in the apartment, Eyeball took her into the bedroom and told her to lie down on the bed. She said that he then pulled her pants down and "put his thing in her booty." She pointed toward her vagina and said "it hurt." After this happened Eyeball got up and told M.T. she could leave. M.T. got dressed and left the apartment. M.T. also told the officer that defendant had been wearing grey underwear.

According to Officer Mertz, after the interview he, M.T. and Dasha walked over to defendant's apartment. At the apartment Dasha confronted defendant while the officer stood off to the side. Defendant denied that he had done anything to M.T. or that M.T. had been there that afternoon. Officer Mertz then stepped up to the door and informed defendant of the reason that they were there. Defendant opened the burglar bars and allowed them into the apartment. Inside the apartment M.T. pointed out the box of "turtle" candy on the kitchen table and led Officer Mertz to the bedroom and pointed to the spot on the bed where she said the incident occurred. Defendant was then placed under arrest.

In court, Officer Mertz identified the box of candy and the bedsheet from defendant's room, which were marked as exhibits and later offered into evidence.

The next witness was Timothy Kern, a Chicago police officer. He testified that he had been with defendant at about 8 p.m. on November 18, 1987, at the 7th District police station, where defendant had been taken upon his arrest. Defendant was asked to remove his clothes. At that time officer Kern observed that defendant had been wearing grey bikini underwear.

Next it was stipulated that Christine Braun, if called, would testify that she was employed by the Chicago police crime lab in the serology department. In that capacity she had the opportunity to perform certain tests on a Vitullo kit from M.T., designated as case No. 448034. The specimens taken from M.T. were negative for the presence of spermatozoa and semen, and M.T.'s clothing also tested negative for semen and blood. However, specimens from the fitted sheet taken from defendant's bed tested positive for the presence of both blood and semen, although the samples were small and further identifying tests could not be performed.

At this point the prosecutor stated his intention to call M.T. and it was necessary, therefore, for the court to make its ruling on her competency to testify. At this time the court ruled that, although it found that M.T. knew the difference between the truth and a lie, she did not appreciate the meaning of an oath. Based upon this finding the court would not allow M.T. to testify. The court ruled, however, that the testimony of M.T.'s mother and Officer Mertz, concerning the statements M.T. had made to them, would be admissible as substantive evidence pursuant to the excited utterance or spontaneous declaration exception to the hearsay rule and pursuant to section 115—10 of the Code of Criminal Procedure, as amended. Ill. Rev. Stat. 1989, ch. 38, par. 115—10.

The State then presented the testimony of Carol Rynne, a nurse at Central Community Hospital who had been working in the emergency room the evening of November 18, 1987, and had been present when the doctor examined M.T. She noted that M.T. clung closely to her mother and was very fearful during the physical examination, fighting the doctor's efforts to examine her. She felt that this was unusual because a child that age is usually very trusting. She also noted that M.T's vaginal area was extremely red. Finally, Nurse Rynne testified that tests were performed on a urine sample taken from M.T. The tests showed that there was no infection present but that there were some red blood cells in the urine.

After the exhibits were admitted into evidence and it was stipulated that defendant, whose nickname was "Eyeball," was over the age of 17, the State rested.

Hart then testified on his own behalf. He stated that he was 40 years old and that on November 18, 1987, had been living with Vanessa Tate and her two children. He admitted that he had been arrested in 1979 for attempted armed robbery and again in 1982 for unlawful use of a weapon. He also admitted that on the afternoon of November 18, 1987, M.T. knocked at his apartment door and asked for "Lena," but he denied that M.T. came into the apartment. He claimed that he had answered the door wearing only his underwear and a robe and that after telling M.T. that Lena was not home, M.T. left. He stated that he didn't see M.T. again until a couple of hours later, when she came back with her mother and a police officer.

Defendant also claimed that he knew Dasha, M.T.'s mother, and that they had had some problems in the past. However, in rebuttal, Dasha was called back to the stand and she denied knowing defendant or having any dealings with him in the past. She further testified that she had been offered money by defendant's girl friend, Vanessa, to refrain from testifying in court.

In surrebuttal, Vanessa Tate testified that Dasha knew defendant because she had purchased cocaine from him in the past. She also testified that it had been Dasha, not her, who had suggested that defendant give her money to "throw out the case." It was then stipulated that there were five witnesses who were willing to testify that they had seen defendant and Dasha together at some point in time prior to the incident.

After the evidence was presented the trial court found defendant guilty of the one count of aggravated criminal sexual abuse. Defendant appeals from this conviction.

Defendant's first issue on appeal is that the trial court erred when it relied, in part, upon the amended version of section 115—10 of the Code of Criminal Procedure to admit the statements made by M.T. to her mother and Officer Mertz. Because the alleged incident occurred on November 18, 1987, and the statute was amended effective January 1, 1988, defendant contends that application of the amended version of the statute constitutes an unconstitutional *ex post facto* application of the law. We disagree.

Two courts have already considered the issue raised by defendant here and have ruled against defendant's position. (See *People v. Priola* (1990), 203 Ill. App. 3d 401, 561 N.E.2d 82; *People v. Morton* (1989), 188 Ill. App. 3d 95, 543 N.E.2d 1366.) While it is true that

these cases involved the admission of the corroborative testimony of a testifying child witness, we do not find that the opinions expressed in these cases were limited to the "corroborative complaint" aspect of the amended statute.

■ Nor do we find that the statute must be deemed *ex post facto* and retroactive application precluded based on defendant's allegation that it operated to deny him his substantive right to confrontation. The confrontation clause does not strictly prohibit the introduction of all out-of-court statements. The focus for admissibility is whether there exist adequate indicia of reliability, which may be predicated upon the fact that the statement falls within a firmly rooted hearsay exception or where the evidence shows a particularized guarantee of trustworthiness. (*People v. White* (1990), 198 Ill. App. 3d 641, 555 N.E.2d 1241[1]; *People v. Rocha* (1989), 191 Ill. App. 3d 529, 541, 547 N.E.2d 1335.) Hence, out-of-court statements have always been admissible under certain circumstances.

■■ ■ For this reason we find that the amended statute did not abrogate defendant's right to confrontation. It merely provided a new procedure whereby an out-of-court statement could be found admissible. We adopt the rationale expressed by the court in *Priola* and hold that the trial court did not err by applying the amended version of the statute retroactively. The statute, as amended, is a procedural rather than a substantive change, which does not alter the elements of the offense, increase the punishment, or decrease the State's burden of proof. Such alterations, which merely remove existing restrictions upon the competency of certain witnesses, relate to modes of procedure only, in which no one has a vested right. (*Thompson v. Missouri* (1898), 171 U.S. 380, 43 L. Ed. 204, 18 S. Ct. 922; *Hopt v. Utah* (1884), 110 U.S. 574, 28 L. Ed. 262, 4 S. Ct. 202; *People v. Dorff* (1979), 77 Ill. App. 3d 882, 396 N.E.2d 827.) Accordingly, the retroactive application of the amended statute does not offend our constitutional concepts concerning *ex post facto* laws.

The next issue raised by Hart is the sufficiency of the evidence. Hart contends that the evidence, even when considering M.T.'s statements to her mother and Officer Mertz, which he believes were improperly admitted, does not support his conviction beyond a reason-

---

[1]After leave to appeal was denied by the Illinois Supreme Court (see *People v. White* (1990), 133 Ill. 2d 570, 561 N.E.2d 705), the case was granted certification by the United States Supreme Court (*White v. Illinois* (1991), ____ U.S. ____, 114 L. Ed. 2d 76, 111 S. Ct. 1681) and presently pends before that Court on a point not directly applicable to the case at bar. See Chicago Law Bulletin, April 29, 1991.

able doubt. He argues that the evidence of sexual abuse, in order to have been sufficient, had to be either clear and convincing or substantially corroborated. In this case, M.T. did not testify. However, Hart asserts that her statements, as testified to by her mother and the officer, were neither clear and convincing nor substantially corroborated. We disagree.

Initially, we note that there is some question whether defendant has cited the proper standard of review to be applied to this case. It is true, as defendant states, that because allegations of sexual misconduct are easily made and hard to defend, it has been held that a conviction for sexual abuse could only be upheld where the complainant's testimony was clear and convincing or substantially corroborated. (See *People v. Diaz* (1990), 201 Ill. App. 3d 830, 558 N.E.2d 1363; *People v. Douglas* (1989), 183 Ill. App. 3d 241, 538 N.E.2d 1335; *People v. Findlay* (1988), 177 Ill. App. 3d 903, 532 N.E.2d 1035.) However, recent case law has held that the "clear and convincing or substantially corroborated" standard is a "particularized definition of reasonable doubt," which, as such, should be rejected as disapproved of by our supreme court. (See *People v. Westfield* (1990), 207 Ill. App. 3d 772, 566 N.E.2d 392; *People v. Byrd* (1990), 206 Ill. App. 3d 996, 562 N.E.2d 176; *People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208; *People v. James* (1990), 200 Ill. App. 3d 380, 558 N.E.2d 732; *People v. Evans* (1990), 199 Ill. App. 3d 330, 556 N.E.2d 904.) These courts have applied the same standard of review typically applied to criminal cases, *i.e.*, whether the evidence, when viewed in a light most favorable to the prosecution, allows a rational trier of fact in finding all the elements of the offense beyond a reasonable doubt. This standard had been adopted by our supreme court as the standard to be applied "to all criminal prosecutions." *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344.

This court agrees that there is no just reason for placing additional evidentiary requirements on cases involving sex offenses. However, we find that, in this case, assuming that M.T.'s statements were admissible, there was sufficient evidence regardless of which standard is applied.

When considering M.T.'s declarations to her mother and the officer, the trial court had to determine their credibility and the weight that they were to be given. When making this assessment, the court was able to consider all the evidence that tended to establish their reliability, *i.e.*, the fact that there was "turtle" candy at defendant's residence and M.T.'s knowledge of the color of defendant's underwear. Also, although defendant denied the sexual assault, he admitted that

M.T. had come to his apartment that afternoon. This evidence, though not corroborative of the sexual assault itself, was corroborative of the veracity of M.T.'s statements. Based on this type of corroboration, the trial court could have found that the statements were clear and convincing.

Additionally, there was sufficient evidence to corroborate the sexual assault itself. There was the medical evidence that M.T.'s vagina was extremely red, consistent with the mechanical action of rubbing. Although the doctor admitted that there could be other causes for redness, such as rash or infection, none of these factors were found to be present. Furthermore, the fact that defendant has postulated other reasons for the redness of M.T.'s vagina does not alter the fact that the redness was also corroborative of abuse. There was also the evidence that semen and blood were present on the bedsheets in the location on the bed where M.T. stated that the assault took place.

While none of these facts, alone, are conclusive, taken together they provide the trial court with sufficient evidence upon which to conclude that defendant was guilty of aggravated criminal sexual abuse beyond a reasonable doubt. The fact that the trial court found defendant guilty of criminal sexual abuse rather than criminal sexual assault does not reflect, in this court's mind, the trial court's doubt as to the veracity of the statements.

The real issue in this case, however, is the admissibility of the nontestifying child-declarant's statements. The trial court found that the statements were admissible under both common law and statutory exceptions to the hearsay rule. Since the admissibility of the statements need be predicated on only one basis, this court will review the trial court's rulings to determine whether either basis was proper.

First, we shall consider whether the statements may be deemed spontaneous declarations. It is undisputed that there are three factors to be considered when determining the admissibility of a statement under the spontaneous declaration exception: (1) there must be an occurrence sufficiently startling to produce a spontaneous and unreflected statement, (2) absence of time to fabricate, and (3) the statement must relate to the circumstances of the occurrence. (*In re L.S.* (1989), 190 Ill. App. 3d 1031, 547 N.E.2d 510; *People v. Hatfield* (1987), 161 Ill. App. 3d 401, 514 N.E.2d 572.) The competency of the declarant to testify at trial, or even the identity of the declarant, for that matter, need not be established since the accuracy and reliability of such statements are founded more on the spontaneity of the statements and the lack of time to fabricate. *Moore v. Bellamy* (1989),

183 Ill. App. 3d 110, 538 N.E.2d 1214; *People v. Hatfield*, 161 Ill. App. 3d at 410.

■ It seems firmly established that an incident of sexual conduct between an adult and a child of "tender years" is an occurrence sufficiently startling to produce a spontaneous statement. (*People v. Roy*, 201 Ill. App. 3d 166, 558 N.E.2d 1208.) Although defendant questions the validity of this assumption, we believe it to be accurate. It may be true that a young child, because of his or her innocence, may not be aware of the nature of the act that took place, and, therefore, may not react in an "excited" manner, as, for example, a rape victim might be expected to react. However, we believe that the "stress" of the sexual encounter may stem from the fact that it is an unusual or extraordinary occurrence or because it caused the child pain. Consequently, a child is likely to report the sexual encounter while under the "stress" of the event even though he or she may not have any outward appearance of excitement.

■ In any event, we do not believe that a child's display of excitement, or lack thereof, is controlling in the determination of whether the statement should be deemed admissible as a spontaneous declaration. Rather, we believe that the more relevant inquiry is whether the facts of the particular case demonstrate sufficient guarantees of trustworthiness and reliability. (See *People v. Nevitt* (1990), 135 Ill. 2d 423, 553 N.E.2d 368 (wherein the court reaffirmed the viability of the excited utterance exception under circumstances similar to the case at bar).) The "totality of the circumstances" approach should be employed to determine whether or not the statements appear to be the product of reflection or fabrication. (*People v. Hatfield*, 161 Ill. App. 3d 401, 514 N.E.2d 572.) Furthermore, a trial court's decision that the statements are reliable and, as such, fall within the excited utterance rule, should not be overturned unless it appears to be an abuse of discretion. *People v. Nevitt*, 135 Ill. 2d 423, 553 N.E.2d 368.

■ We do not find that, under the facts of this case, the trial court abused its discretion when it found that M.T.'s statements to her mother and Officer Mertz were excited utterances. (See *People v. White*, 198 Ill. App. 3d at 654.) The evidence at trial indicates that M.T. returned home from defendant's apartment and told her sister about the encounter with defendant. M.T's sister told her mother, Dasha, and Dasha then questioned M.T. briefly about what happened. The police were then called immediately and Officer Mertz arrived soon thereafter. He then questioned M.T. outside the presence of her mother, after which time they walked to defendant's apartment and

confronted him. By defendant's own testimony the lapse of time between M.T.'s initial visit to his apartment and the time that M.T. came to his apartment with the police was "a couple of hours." Consequently, M.T.'s statements to her mother and Officer Mertz occurred within a couple of hours of the sexual attack. When considering the age of the child and the brief amount of time between the incident and M.T.'s statements, we agree with the trial court that there was an absence of time to fabricate the statements, and we find that the trial court did not abuse its discretion by finding that the statements were reliable and not the product of reflection or fabrication, and admissible as excited utterances.

Although defendant directs this court's attention to our decision in *In re L.S.* as support for the proposition that M.T.'s statements should not be deemed spontaneous declarations, we disagree that our prior decision conflicts with our present holding. In *In re L.S.* this court found the record was insufficient to allow a fair review of the trustworthiness of the statements.

Based upon our above ruling, that M.T.'s statements were admissible as spontaneous declarations, it is unnecessary for us to consider whether M.T.'s statements were also admissible under section 115—10 of the Code of Criminal Procedure (Ill. Rev. Stat. 1989, ch. 38, par. 115—10). However, we shall briefly address the issues raised by defendant relative to the admissibility of M.T.'s statements under the statute.

Effective January 1, 1988, section 115—10 of the Code was amended to state:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

(d) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement." Ill. Rev. Stat. 1989, ch. 38, par. 115—10.

Hart contends that M.T.'s statements were inadmissible under this statute because (1) no separate hearing was held to determine the reliability of the statements admitted, (2) M.T. was not "unavailable" within the meaning of the statute, and (3) because there was insufficient corroborative evidence of the act which was the subject of the statement.

It is true that the trial court did not conduct a separate hearing to determine the admissibility of the statements prior to trial. However, defendant was tried before the bench and the trial judge determined the admissibility of the evidence after hearing the State's evidence. As stated in *People v. Roy*, the requirement of a "hearing outside the presence of the jury" is not wholly inapplicable to bench trials. However, since the trial judge is presumed to have considered only admissible evidence, he may be presumed to have considered the time, content, and circumstances under which the statement was made in determining the reliability of the statements. *People v. Roy*, 201 Ill. App. 3d at 183.

In *Roy*, the failure to conduct a hearing was not held to be error even though the trial court never specifically articulated its findings as to the reliability of the statements. In the present case, however, the court noted, when making its determination regarding the admissibility of the statements, that it believed that there were sufficient safeguards of reliability. Again, at the close of the trial, when determining defendant's guilt, the court once again noted that it ad-

mitted M.T.'s statements because it believed that she did not have time to fabricate the story concerning the sexual encounter. We find that under these circumstances, the fact that no separate hearing was held was harmless error.

We also disagree with defendant's claim that M.T. was not "unavailable" within the meaning of the statute. M.T. was deemed incompetent to testify because the court found that she could not appreciate the meaning of an oath. Incompetency to testify falls within the parameters of "unavailable," as contemplated by the statute. *People v. Rocha*, 191 Ill. App. 3d at 538-39.

As noted in *Rocha*, there is, at first blush, a seeming paradox in allowing an out-of-court statement into evidence when the declarant is found to be incompetent. However, upon closer inspection the practice is based upon sound reasoning, *i.e.*, that a child's earlier statement may actually be more reliable where the time and circumstances under which it was made indicate that it was not the product of fabrication or reflection. Therefore, in this case, where the trial court found that M.T. was incompetent by virtue of her inability to appreciate the meaning of an oath, the trial court was indicating that M.T.'s in-court testimony might have been more easily susceptible to outside influence and, consequently, less reliable. This, however, should not and does not reflect in any adverse manner upon the reliability of the out-of-court statements that are found to be admissible because their time, content and circumstances provided sufficient indicia of reliability.

Lastly, we reject defendant's claim that there was insufficient corroboration. As noted earlier in our discussion concerning admissibility under the excited utterance rule, M.T.'s statements were corroborated by medical evidence, namely, the redness of M.T.'s vagina and the fact that semen was found to be present in the exact location of defendant's bed where M.T. indicated that the incident took place.

For all the reasons stated above the judgment of the circuit court of Cook County, finding Hart guilty of aggravated criminal sexual abuse, is hereby affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.