THE STATE OF OHIO, APPELLANT, *v.* SILVERMAN, APPELLEE.

[Cite as *State v. Silverman*, 121 Ohio St.3d 581, 2009-Ohio-1576.]

*Criminal law — Hearsay — Evid.R. 807 — Child declarant — A hearsay statement of a child declarant can be admitted under Evid.R. 807 without a determination of the child's competence to testify.*

(No. 2008-0582 — Submitted February 3, 2009 — Decided April 9, 2009.)

APPEAL from the Court of Appeals for Montgomery County,

No. 22097, 176 Ohio App.3d 12, 2008-Ohio-618.

_____

SYLLABUS OF THE COURT

A hearsay statement of a child declarant can be admitted under Evid.R. 807 without a determination of the child's competence to testify. (*State v. Said* (1994), 71 Ohio St.3d 473, 644 N.E.2d 337, limited.)

_____

O'CONNOR, J.

{¶ 1} Today we determine whether the statements of a child whose testimony is not reasonably obtainable are admissible when the trial court has not determined the child's competence. For the reasons that follow, we hold that the question of the admissibility of the statements under Evid.R. 807 does not require a prior determination of the child's competence to testify.

**Relevant Background**

{¶ 2} During Memorial Day weekend in 2006, appellant Doron Silverman and his family[1] visited his parents and sister Batya Silverman in Indianapolis. After dinner, Batya went back to her apartment with Silverman's four-year-old son, M.S., who stayed the night with her.

_____

1. This included Silverman's wife Heather, his three-month-old daughter, K.S., and his son, M.S.

**{¶ 3}**  Batya and M.S. spent the next day at the apartment complex's swimming pool.  After going back to her apartment, Batya decided to bathe M.S. to wash off the chlorine from the pool.  Batya, whom M.S. called "Poti," was undressing M.S. when he pulled on his penis, pointed to it, and said to her, "Poti, put your mouth on it."

**{¶ 4}**  Batya was shocked by this statement because it was the first time M.S. had ever said anything like that to her.  She asked her boyfriend, Joe Farber, to come in and hear what M.S. had said.  Farber first asked M.S., to no avail, why he said that to Batya.  He then questioned M.S. whether he had ever seen that in a movie; M.S. answered no.  M.S. also said no when Farber inquired whether he had ever seen his parents do that.  Finally, when Farber asked where M.S. learned it, M.S. responded, "Daddy did it.  No more talk."  With that, Batya and Farber decided not to pressure M.S. any more at that time, and they finished up the bath.

**{¶ 5}**  Silverman and his wife came over to Batya's that night, but M.S.'s earlier comment was not mentioned.  M.S. again stayed the night at Batya's, and the next day Farber and Batya asked M.S. if he remembered what he had told them in the bathroom the previous day.  M.S. said that he did, and they asked M.S. again if he had learned it from watching a movie or his parents, to which M.S. replied that daddy had done it.  When asked if he did it to his father too, M.S. said yes.  Batya explored this line of questioning, and when she asked M.S. if he had kissed his father's penis, he answered, "No, I lick it."  M.S. further indicated that Silverman was the only person who did this to him, that it was a secret, and that he did not want to talk any more because he would get in trouble. By the end of the conversation, M.S., who had been coloring, was stabbing the paper with his pen and shaking his clenched fists.

**{¶ 6}**  Batya's mother then arrived unannounced at Batya's apartment. Batya relayed to her what M.S. had said.  They left M.S. with Farber and another friend of Batya's and went back to Batya's parents' house.  When Silverman

2

arrived, Batya told him about M.S.'s comments. Silverman did not respond to this information.

**{¶ 7}** After further conversation, the family decided not to call the police and that M.S. and his sister would remain in Indiana for several days while Silverman received help. However, Batya learned about a week later that the children had been returned to Silverman's care, which was sooner than the family had originally planned. Soon thereafter, she contacted the Montgomery County Children Services agency and the West Carrollton police department.

**{¶ 8}** The police interviewed Silverman and his wife on June 13. During the interview, Silverman explained that because his wife was a stay-at-home mother, his only responsibility with the children was to bathe them. He told the detective that when he would get home from working at Chuck E. Cheese, he would take off his clothes and put on a robe – sometimes tying it, sometimes not. He and the kids would then take a bath together, and Silverman claimed that M.S. would climb over him like a "jungle gym." On one occasion, Silverman claimed that M.S. pulled on Silverman's penis in the bath, and Silverman responded by pulling on M.S.'s. Silverman also told the detective that one time when M.S. was climbing on him, M.S. bit Silverman's penis while it was erect. When asked how many times Silverman had his mouth on M.S.'s genitals, Silverman said two or three times for about a second each time. When the interview was over, Silverman agreed to write down a statement.

**{¶ 9}** On July 21, 2006, the Montgomery County Grand Jury returned a three-count indictment against Silverman for rape and gross sexual imposition. Prior to the indictment, however, Silverman's wife set fire to their residence. M.S. and K.S. were killed in the fire.[2]

---

2. Heather Silverman has since pleaded guilty to two counts of murder and three counts of aggravated arson.

**{¶ 10}** Because of M.S.'s death, the state moved to declare M.S. unavailable for trial and to admit into evidence the statements that he had made to Batya and Farber. After conducting a hearing pursuant to Evid.R. 807, the trial court granted the state's motion and held that M.S.'s statements were admissible. The case proceeded to trial, and the jury returned a guilty verdict on only the gross-sexual-imposition charge. Silverman was sentenced to five years in prison.

**{¶ 11}** Silverman appealed to the Second District Court of Appeals, arguing that the trial court erred by admitting M.S.'s statement. Relying upon this court's decision in *State v. Said* (1994), 71 Ohio St.3d 473, 644 N.E.2d 337, the appellate court reversed and overturned the conviction. *State v. Silverman*, 176 Ohio App.3d 12, 2008-Ohio-618, 889 N.E.2d 1034.

**{¶ 12}** We accepted jurisdiction over the state's appeal. *State v. Silverman*, 118 Ohio St.3d 1505, 2008-Ohio-3369, 889 N.E.2d 1024. The state now asks us to overrule *Said* in its entirety or, in the alternative, to limit its holding. Barring that, the state urges us to find that a child's competence can be established through extrinsic evidence. Because we find that admissibility under Evid.R. 807 is not dependent on the child's competence, we need not determine if competence can be established by extrinsic evidence.

**Analysis**

**{¶ 13}** We begin our analysis by examining Evid.R. 807.

**{¶ 14}** The rule provides an exception to the general exclusion of hearsay statements when a child under the age of 12 at the time of trial or hearing makes an out-of-court statement describing any sexual act that is performed on, with, or by the child. Evid.R. 807(A). For the statement to be admitted, the proponent of the statement must not be able to reasonably obtain the child's testimony. Evid.R. 807(A)(2). It is axiomatic that the testimony is not reasonably obtainable when the child is deceased at the time of trial or hearing. See Evid.R. 807(B)(3)(a). Notably absent from the rule is any requirement that the child declarant be

determined to be competent to testify before the statement is admitted. See *Said*, 71 Ohio St.3d at 480, 644 N.E.2d 337 (Resnick, J., concurring in part and dissenting in part) ("A competency hearing simply is not required by the plain terms of Evid.R. 807(A)").

{¶ 15} In *Said*, we were confronted primarily with the trial court's failure to record the hearing determining the competence of a five-year-old witness. The majority held that the failure to record the hearing was reversible error. Id., 71 Ohio St.3d at 475, 644 N.E.2d 337. Having found error, the majority should have stopped there. However, the majority sweepingly declared, without any authority, that "Evid.R. 807 clearly does not dispose of the need to find a child competent." Id. at 476, 644 N.E.2d 337. Thus, in order to admit a child's statement under Evid.R. 807 after *Said*, a trial court is required to find that the child was competent at the time he made the out-of-court statement. Id. at 477, 644 N.E.2d 337.

{¶ 16} The dissent in *Said* foresaw the problems with the majority's rationale and noted that the competence requirement established by the majority "exceed[ed] the boundaries of Evid.R. 807." Id., 71 Ohio St.3d at 479, 644 N.E.2d 337. It recognized that "[t]he effect of instituting the majority's position * * * will be to preclude the admission of otherwise qualified out-of-court statements into evidence. For example, in those situations where the abused victim falls into a coma or dies at some point after making statements to a parent or therapist concerning the source of his or her abuse, the statements would not be admissible, given the child's inability to attend a competency hearing. That result surely defeats the obvious purpose for which Evid.R. 807 was adopted." Id. at 480, 644 N.E.2d 337.

{¶ 17} The prescience of the dissent was borne out in *State v. Meadows* (Feb. 12, 2001), 4th Dist. No. 99CA2651, 2001 WL 803822. In that case, a jury convicted the defendant of murdering his three-year-old daughter. The state

introduced testimony from several witnesses relating comments made to them by the daughter that the defendant had abused her. The defendant argued that the testimony was not admissible because the state had failed to satisfy the requirements of Evid.R. 807 and the trial court had not determined whether the daughter was competent under Evid.R. 601 at the time she made her remarks.

{¶ 18} The court of appeals rejected that argument, finding that "*Said* * * * exclude[d] hearsay statements that Evid.R. 807 plainly contemplates are admissible." Id. at *9. It therefore distinguished *Said* on the basis of the child's death, finding that in this "situation, the reasoning of the *Said* Court deviates from the clear provisions of Evid.R. 807." Id.

{¶ 19} The distinction that the Fourth District Court of Appeals drew in an attempt to evade *Said* is artificial and does not withstand close scrutiny in light of *Said*'s far-reaching holding. In *Said*, this court held in no uncertain terms that a competence hearing was required for the statements to be admissible under Evid.R. 807. It left no room for exceptions. If, in the case sub judice, we were to draw a distinction based on the child's death, we would leave room to question whether *Said* continues to apply to children who are unavailable due to an infirmity or other medical condition, like a coma.

{¶ 20} We now hold that the better approach is to return to the plain text of Evid.R. 807. The rule says absolutely nothing about a child declarant's competence. Despite the fact that the text of the rule lacks this requirement, *Said* imposed a judicially created rule that contravenes both the language and intent of Evid.R. 807.

{¶ 21} The Supreme Court of Washington recently confronted the same problem we do today. In *State v. C.J.* (2003), 148 Wash.2d 672, 63 P.3d 765, the court examined the relationship between its competence and child-hearsay-exception statutes. In doing so, the court implicitly overruled its prior decision in *State v. Ryan* (1984), 103 Wash.2d 165, 691 P.2d 197. See *C.J.*, 148 Wash.2d at

694, 63 P.3d 765 (Sanders, J., dissenting). In *Ryan*, the court had held that a "declarant's competency is a precondition to admission of his hearsay statements." Id., 103 Wash.2d at 173, 691 P.2d 197. In reaching this conclusion, *Ryan* relied on the same authority as this court did in *Said* – 5 Wigmore on Evidence (Chadbourn Rev.1974) 255, Section 1424.

{¶ 22} In contrast, the court in *C.J.* found that the prerequisites of Washington's child-hearsay-exception statute, Wash.Rev. Code 9A.44.120, like Evid.R. 807, do not contain "any requirement that a declarant * * * be shown to have possessed testimonial competency at the time of the out of court statement." Id., 148 Wash.2d. at 683, 63 P.3d 765. That state's supreme court determined that if the Washington legislature had intended the child to be competent when making the out-of-court statement, it would have included such language in the statute. Id. at 684, 63 P.3d 765. Furthermore, the court reasoned that a finding of incompetence "does not make the hearsay statements unreliable." Id. at 685, 63 P.3d 765. Therefore, so long as the child's out-of-court statement satisfies Wash.Rev.Code 9A.44.120's requirements of reliability and corroboration, the statement is admissible if the child is unavailable. Id.

{¶ 23} Likewise, the Supreme Court of Colorado has recognized that there is a "flawed assumption that a determination of incompetency at the time of the hearing invariably establishes that the child's statement was not reliable." *People v. Dist. Court of El Paso Cty.* (Colo.1989), 776 P.2d 1083, 1088.[3] The issue before the court was whether the trial court properly excluded a four-year-old victim's hearsay statements regarding her father's alleged sexual abuse after determining that she was incompetent to testify as a witness.

---

3. Other states that adhere to this rationale include Florida, *Perez v. State* (Fla.1988), 536 So.2d 206, and Illinois, see *People v. Hart* (1991), 214 Ill.App.3d 512, 158 Ill.Dec. 103, 573 N.E.2d 1288 (abrogated on other grounds).

**{¶ 24}** As does the Washington statute previously discussed and Evid.R. 807, Colo.Rev.Stat. 13-25-129 contains an exception from the hearsay exclusion for statements made by a child who has been abused. Under the Colorado law, the child's out-of-court statement is admissible, when the child is unavailable to testify, if "[t]he [trial] court finds in a hearing * * * that the time, content, and circumstances of the statement provide sufficient safeguards of reliability." Colo.Rev.Stat. 13-25-129(1)(a).

**{¶ 25}** The court in *El Paso* distinguished the purpose of a hearing on competence, which "determines only whether a child can accurately recollect and narrate at trial the events of abuse," id., 776 P.2d at 1087, from the purpose of the hearsay-exception statute, which permits admission of the statement, without the need to determine competence, when the trial court determines that the "statement is supported by sufficient safeguards of reliability under [Colo.Rev.Stat.] 13-25-129(1)(a)." Id. at 1088. Thus, as long as the child's statement satisfied those safeguards, it was admissible regardless of competence. Id. at 1090.

**{¶ 26}** The plain text of Evid.R. 807, the cogent dissent in *Said*, and the reasoning of *C.J.* and *El Paso* provide compelling reasons to find that the dicta in *Said* that judicially grafted the competence requirement onto Evid.R. 807 is improper and does not effectuate the rule. Even a cursory look at Evid.R. 807 illustrates the high threshold a movant must meet for the statement to be admitted.[4]

---

4. A 1995 review of child-hearsay statutes revealed that of the 34 states that then allowed an exception to hearsay for child victims of abuse, Ohio was the only one that required that the declarant's statement be as reliable as one admitted under other hearsay exceptions, that the child declarant be unavailable to testify, and that there be independent corroboration of the crime. Robert Marks, Note, Should We Believe the People Who Believe the Children?: The Need for a New Sexual Abuse Tender Years Hearsay Exception Statute (1995), 32 Harv.J. on Legis. 207, 238-240.

**{¶ 27}** First, the court must consider a host of factors "surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement." Evid.R. 807(A)(1). Second, the child's testimony must reasonably be unobtainable. Evid.R. 807(A)(2). Finally, there must be independent corroboration of the alleged acts. Evid.R. 807(A)(3).

**{¶ 28}** Applying these requirements to the case at hand, the trial court carefully reviewed the totality of the circumstances surrounding M.S.'s statements and appropriately determined that there were sufficient indicia of reliability and particularized guarantees of trustworthiness that made the statements as reliable as those admitted under Evid.R. 803 and 804. In particular, the trial court noted that M.S.'s initial statement was unsolicited and spontaneous; subsequent statements were consistent; M.S. was not coached or coerced, and the statements were given without input from Batya and Farber; M.S. recognized the nature of his statements when he refused to answer any more questions; the acts M.S. described are not expected to be within the knowledge of a child that age unless he had observed those acts or was the victim of them; and there was no evidence of a motive to lie about these allegations.

**{¶ 29}** Furthermore, the remaining criteria of Evid.R. 807 obviously were satisfied: M.S. was unavailable to testify; Silverman's confession provided independent corroboration of the sexual acts; and the state provided proper notification of its intent to use the statement.[5] The statement, therefore, was properly admitted under Evid.R. 807.

---

5. Evid.R. 807(A)(2), (3), and (4).

**{¶ 30}** We are mindful that today's holding entails limiting *Said* to the extent that *Said* requires that a child be found competent prior to admitting the statement under Evid.R. 807. Although the principle of " 'stare decisis is the bedrock of the American judicial system,' " *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 22, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, it is one " 'of policy and not a mechanical formula of adherence to the latest decision.' " *Payne v. Tennessee* (1991), 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720, quoting *Helvering v. Hallock* (1940), 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604.

**{¶ 31}** In *Galatis*, we recognized this tension and adopted a test for overruling precedent. However, "[c]onsiderations in favor of *stare decisis* are at their acme * * * where reliance interests are involved," *Payne*, 501 U.S. at 828, 111 S.Ct. 2597, 115 L.Ed.2d 720. Individuals conducting their affairs must be able to rely on the law's stability. See, e.g., *United States ex rel. Fong Foo v. Shaughnessy* (C.A.2, 1955), 234 F.2d 715, 719. Thus, *Galatis* must be applied in matters of substantive law.

**{¶ 32}** "[T]he opposite is true in cases * * * involving procedural and evidentiary rules," *Payne*, 501 U.S. at 828, 111 S.Ct. 2597, 115 L.Ed.2d 720, because a procedural or evidentiary rule "does not serve as a guide to lawful behavior." *United States v. Gaudin* (1995), 515 U.S. 506, 521, 115 S.Ct. 2310, 132 L.Ed.2d 444. In fact, "as to such rules, stare decisis has relatively little vigor." *Shaughnessy*, 234 F.2d at 719; see also *Williams v. Kidd* (1915), 170 Cal. 631, 650, 151 P. 1 ("There is * * * nothing, of course, in the doctrine of *stare decisis* which can apply to a mere rule of evidence in which no one has a vested right").

**{¶ 33}** The instant case addresses an evidentiary rule and procedure "that do[ ] not alter primary conduct." *Hohn v. United States* (1998), 524 U.S. 236, 252, 118 S.Ct. 1969, 141 L.Ed.2d 242. *Said*'s expansive holding did not affect

Silverman's conduct in this matter, so overruling *Said* will not disrupt any reliance interest. See *Pearson v. Callahan* (2009), __ U.S. __, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 ("Like rules governing procedures and the admission of evidence in the trial courts, [the] two-step protocol [established in *Saucier v. Katz* (2001), 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272] does not affect the way in which parties order their affairs. Withdrawing from *Saucier*'s categorical rule would not upset settled expectations on anyone's part"). *Galatis* therefore is inapplicable because this matter involves an evidentiary rule, and so stare decisis plays a reduced role. *Gaudin*, 515 U.S. at 521, 115 S.Ct. 2310, 132 L.Ed.2d 444.

### Conclusion

**{¶ 34}** For the foregoing reasons, we limit *Said* and hold that a hearsay statement of a child declarant can be admitted under Evid.R. 807 without a determination of the child's competence to testify. We therefore reverse the judgment of the court of appeals and reinstate the trial court's judgment.

Judgment reversed.

LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER and LANZINGER, JJ., dissent.

_____

**MOYER, C.J., dissenting.**

**{¶ 35}** I concur in Justice Lanzinger's dissent, which argues that the judgment of the court of appeals should be affirmed. But I do not agree with the dissent's rejection of *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. First, I am not prepared to abandon application of the *Galatis* test in criminal cases. The ability to rely on a stable legal framework is, if anything, more important in criminal matters where an individual's liberty may be at stake. Second, I do not agree with the majority that we should abandon the *Galatis* test in these circumstances. The majority argues that stare decisis plays a "reduced role" here because the issue before us involves a rule of evidence

rather than a substantive rule of law and there are no reliance interests at stake. Majority opinion at ¶ 33. The majority goes on, however, to reduce to zero the role of our precedent, offering little more than disagreement with our prior reasoning for why *State v. Said* (1994), 71 Ohio St.3d 473, 644 N.E.2d 337, should be limited or abandoned. The majority relies on United States Supreme Court opinions for the contention that stare decisis is less important in procedural matters. See, e.g., *Pearson v. Callahan* (2009), __ U.S. __, 129 S.Ct. 808, 172 L.Ed.2d 565. This approach is certainly not binding on us, and I refrain from either adopting or rejecting it at this point.

{¶ 36} I would note, however, that the majority overstates the arguments from the United States Supreme Court cases. Beyond contending that reliance interests are not implicated by procedural rules, the court in *Pearson* also noted abundant criticism of the precedent at issue as well as its inconsistent application by the lower courts. Id. at ___ U.S. ___, ___, 129 S.Ct. at 816-818, 172 L.Ed.2d 565. The court in *Payne v. Tennessee* (1991), 501 U.S. 808, 828-830, 111 S.Ct. 2597, 115 L.Ed.2d 720, similarly overruled two cases after acknowledging that several justices had questioned the precedent and that it had "defied consistent application by the lower courts." The opinion in *Hohn v. United States* (1998), 524 U.S. 236, 252, 118 S.Ct. 1969, 141 L.Ed.2d 242, pointed to inconsistent application of the precedent at issue within United States Supreme Court cases themselves. The majority additionally cites *United States v. Gaudin* (1995), 515 U.S. 506, 521, 115 S.Ct. 2310, 132 L.Ed.2d 444, which does not specifically rely on the inconsistent application of a prior rule to overturn precedent but does emphasize that the precedent relied on an interpretation of the United States Constitution that had since been eroded by subsequent decisions.

{¶ 37} Although these cases from the United States Supreme Court do not directly adopt a multipart framework for overruling precedent, they consistently rely on essentially the same factors that we outlined in *Galatis*. *Galatis* held that

"[a] prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at paragraph one of the syllabus. In *Pearson*, for example, the United States Supreme Court correspondingly relied on arguments that the prior cases were to at least some extent wrongly decided, that the precedent had been inconsistently applied, and that reliance interests were lessened because the case involved a procedural rule. *Pearson*, __ U.S. __, 129 S.Ct. at 816-821, 172 L.Ed.2d 565.

{¶ 38} The majority misconstrues the United States Supreme Court opinions, ignoring the factors, other than reliance interests, that were considered by the court before it overruled a prior decision. A thorough examination of the cases cited by the majority actually confirms the prudence of our test in *Galatis*. Because I believe *Said* was rightly decided and should be followed here, I find it unnecessary to apply *Galatis*. But even if one disagrees, as the majority does, our well-established test for overturning precedent should be fully applied. The majority's opinion actually indirectly applies the first and third steps of the *Galatis* test, though it comes to the wrong conclusion, in discussing the purported problems with *Said* and the lack of reliance interests at stake. It nevertheless neglects to apply the second step and concludes that *Galatis* is inapplicable based only on the third step. For these reasons, as well as those offered by Justice Lanzinger, I dissent.

_____

**LANZINGER, J., dissenting**

{¶ 39} Because Evid.R. 601 does not yet provide that children victimized by sexual abuse are presumed to be competent to testify, I would affirm the

judgment of the court of appeals. In casting aside the need for a competence determination because of its interpretation of Evid.R. 807, the child-hearsay exception, the majority actually overrules *State v. Said* (1994), 71 Ohio St.3d 473, 644 N.E.2d 337. I respectfully dissent.

{¶ 40} The majority concludes that the text of Evid.R. 807 does not require a competence determination and opines that the *Said* court "sweepingly declared, *without any authority,* that 'Evid.R. 807 clearly does not dispose of the need to find a child competent.' Id. at 476, 644 N.E.2d 337." (Emphasis added.) Majority opinion at ¶ 15. However, this statement ignores the court's reliance on Evid.R. 601 in *Said.*

*Competence of a witness is governed by Evid.R. 601*

{¶ 41} While it is true that Evid.R. 807 does not address a child's competence, Evid.R. 601(A) does address competence:

{¶ 42} "Every person is competent to be a witness *except*

{¶ 43} "(A) Those of unsound mind, and *children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.*" (Emphasis added.) This rule, therefore, presumes that children under ten are incompetent unless certain factors have been met.

{¶ 44} A trial court must conduct a voir dire examination of a child under ten years of age to determine the child's competence to testify. In making this determination, the court must consider "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful." *State v. Frazier* (1991), 61 Ohio St.3d 247, 251, 574 N.E.2d 483.

{¶ 45} Competence is an issue separate from any hearsay exception.

*Ohio's child hearsay exception rule is Evid.R. 807*

{¶ 46}  Evid.R. 807 was adopted, effective July 1, 1991, as a result of this court's request to the Supreme Court Rules Advisory Committee and the  General Assembly to address the special problems presented by the hearsay statements of children in abuse cases.  *State v. Boston* (1989), 46 Ohio St.3d 108, 115, 545 N.E.2d 1220.  Notably, however, Evid.R. 601 did not change.

{¶ 47} Evid.R. 807 obliges the trial court to find that the circumstances surrounding the making of the child's statement make the statement "at least as reliable" as those admitted under Evid.R. 803 (availability of declarant immaterial) and 804 (declarant unavailable).  The rule includes factors that should be considered when determining the reliability of the statement.

{¶ 48}  Evid.R. 807(A) provides:

{¶ 49} "An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual act performed by, with, or on the child or describing any act of physical violence directed against the child is not excluded as hearsay under Evid.R. 802 if all of the following apply:

{¶ 50} "(1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to *Evid.R. 803* and *804*.  The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement.  In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the

means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence."

{¶ 51} Evid.R. 807(A) also requires that the child's testimony not be "reasonably obtainable by the proponent of the statement," that there be independent proof of the sexual act or act of physical violence, and that the proponent notify all other parties of the content of the statement, the identity of the witness, and the circumstances surrounding the statement at least ten days before the trial or hearing. Evid.R. 807(A)(2) to (4). The remainder of the rule defines the phrase "not reasonably obtainable." Evid.R. 807(B).

{¶ 52} Far from imposing a judicially created requirement onto the rule, the majority in *Said* explained how Evid.R. 807 does not dispose of the need to find a child competent, since competence is not the same issue as hearsay:

{¶ 53} "Competency under Evid.R. 601(A) contemplates several characteristics. * * * Those characteristics can be broken down into three elements. First, the individual must have the ability to receive accurate impressions of fact. Second, the individual must be able to accurately recollect those impressions. Third, the individual must be able to relate those impressions truthfully. See, generally, 2 Wigmore on Evidence (Chadbourn Rev.1979) 712-713, Section 506.

{¶ 54} "Out-of-court statements that fall within Evid.R. 807, like the other hearsay exceptions, possess a 'circumstantial probability of trustworthiness.' See 5 Wigmore, *supra*, at 253, Section 1422. In other words, under unique circumstances, we make a qualified assumption that the declarant *related* what she believed to be true at the time she made the statement. However, those same circumstances do not allow us to assume that the declarant accurately *received* and *recollected* the information contained in the statement. Whether she accurately received and recollected that information depends upon a different set

of circumstances, those covering the time from when she received the information to when she related it. As a result, even though a statement falls within a hearsay exception, two elements of the declarant's competency remain at issue and must still be established. Thus, a trial court must find that a declarant under the age of ten was competent at the time she made the statement in order to admit that statement under Evid.R. 807." (Emphasis sic and footnote omitted.) 71 Ohio St.3d at 476-477, 644 N.E.2d 337.

{¶ 55} This court's rationale for requiring competence determinations shows that the principle established in *Said* was well grounded and was hardly made "without authority."

*Child-hearsay exceptions in other jurisdictions*

{¶ 56} Other states have handled the concern over competence by statute, establishing that children under ten are competent if they are victims of certain offenses. See, e.g., Ala.Code 15-25-3(e) ("a child victim of a physical offense, sexual offense, or sexual exploitation, shall be considered a competent witness"); Conn.Gen.Stat.Ann. 54-86h ("any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification"); Utah Code Ann. 76-5-410 ("A child victim of sexual abuse under the age of ten is a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding. The trier of fact shall determine the weight and credibility of the testimony"); Mo.Ann.Stat. 491.060(2).

{¶ 57} Similarly, in federal courts, child victims are presumed competent to testify. Section 3509(c)(2), Title 18, U.S.Code. A court may conduct a competence examination of a proposed child witness only upon submission of a written motion by a party offering proof of incompetence and compelling reasons for the examination. Section 3509(c)(3) and (4), Title 18, U.S.Code.

{¶ 58} The majority cites cases from Washington and Colorado to bolster its conclusion that a competence determination is not needed in Ohio. *State v.*

17

*C.J.* (2003), 148 Wash.2d 672, 63 P.3d 765; *People v. Dist. Court of El Paso Cty.* (Colo.1989), 776 P.2d 1083. But the law of both states differs from Ohio's in significant ways. Unlike Evid.R. 601, the Washington competence statute does not directly create a presumption that children under ten are not competent. The Washington statute simply states that persons are incompetent if they "are of unsound mind, or intoxicated at the time of their production for examination," and "appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly." Wash.Rev.Code 5.60.050. And Colorado specifically removes the presumption of a child victim's incompetence in a civil or criminal proceeding for child abuse or a sexual offense if the child is "able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." Colo.Rev.Stat.Ann. 13-90-106(1)(b)(II).

{¶ 59} Evid.R. 601, on the other hand, does not exempt any type of proceeding that involves children from the presumption of incompetence.

*Changes to the competence rules are a matter for the Rules Committee*

{¶ 60} The court of appeals followed *Said*'s mandate that "a trial court must find that a declarant under the age of ten was competent at the time she made the statement in order to admit that statement under Evid.R. 807." 71 Ohio St.3d at 477, 644 N.E.2d 337. Appellant argues that *Said* should be overruled and that competence hearings should be abandoned when a child's statement meets all of the requirements of Evid.R. 807 because the child victim's statements are needed to prosecute sexual abuse cases and Evid.R. 807 guarantees the reliability of the statements.

{¶ 61} These are good policy arguments. But Evid.R. 601 still speaks of the presumed incompetence of a child under ten. The Ohio Rules of Evidence are designed to work together with the common law. "The principles of the common law of Ohio shall supplement the provisions of these rules, and the rules shall be

construed to state the principles of the common law of Ohio unless the rule clearly indicates that a change is intended." Evid.R. 102. Evid.R. 807 does not indicate an intent to disturb Evid.R. 601. Until Evid.R. 601 is modified, and the presumption is changed for cases of this type, competence is still an issue for the trial court to determine.

{¶ 62} I also disagree with the majority's discussion of *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. I would not apply the precedent-changing rules to criminal cases, because those rules were created in the context of substantive civil rather than criminal law. In addition, Evid.R. 807 is more than a mere procedural rule when it applies to criminal cases. A defendant's right to confrontation is protected by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution ("In any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face"). And as this court noted in *State v. Muttart*, " 'Evid.R. 807's "totality of the circumstances" test is designed specifically with the Confrontation Clause requirements in mind. See Staff Notes to Evid.R. 807.' " 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 37, quoting *State v. Dever* (1992), 64 Ohio St.3d 401, 414, 596 N.E.2d 436.

{¶ 63} *State v. Said*, 71 Ohio St.3d 473, 644 N.E.2d 337, remains good law in Ohio. The General Assembly has provided a child-hearsay exception by approving changes to the Ohio Rules of Evidence offered by the Supreme Court's Rules Committee. But until there is a presumption of competence for child witnesses provided under Evid.R. 601, I would follow precedent. Therefore, I respectfully dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine and Carley J. Ingram, Assistant Prosecuting Attorneys, for appellant.

Michael T. Columbus and Frank Malocu, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, urging affirmance for amicus curiae, Ohio Public Defender.

_____