O’Connor, J.
{¶ 1} Today we determine whether the statements of a child whose testimony is not reasonably obtainable are admissible when the trial court has not deter *582 mined the child’s competence. For the reasons that follow, we hold that the question of the admissibility of the statements under Evid.R. 807 does not require a prior determination of the child’s competence to testify.
Relevant Background
{¶ 2} During Memorial Day weekend in 2006, appellant Doron Silverman and his family[1] visited his parents and sister Batya Silverman in Indianapolis. After dinner, Batya went back to her apartment with Silverman’s four-year-old son, M.S., who stayed the night with her.
{¶ 3} Batya and M.S. spent the next day at the apartment complex’s swimming pool. After going back to her apartment, Batya decided to bathe M.S. to wash off the chlorine from the pool. Batya, whom M.S. called “Poti,” was undressing M.S. when he pulled on his penis, pointed to it, and said to her, “Poti, put your mouth on it.”
{¶ 4} Batya was shocked by this statement because it was the first time M.S. had ever said anything like that to her. She asked her boyfriend, Joe Farber, to come in and hear what M.S. had said. Farber first asked M.S., to no avail, why he said that to Batya. He then questioned M.S. whether he had ever seen that in a movie; M.S. answered no. M.S. also said no when Farber inquired whether he had ever seen his parents do that. Finally, when Farber asked where M.S. learned it, M.S. responded, “Daddy did it. No more talk.” With that, Batya and Farber decided not to pressure M.S. any more at that time, and they finished up the bath.
{¶ 5} Silverman and his wife came over to Batya’s that night, but M.S.’s earlier comment was not mentioned. M.S. again stayed the night at Batya’s, and the next day Farber and Batya asked M.S. if he remembered what he had told them in the bathroom the previous day. M.S. said that he did, and they asked M.S. again if he had learned it from watching a movie or his parents, to which M.S. replied that his daddy had done it. When asked if he did it to his father too, M.S. said yes. Batya explored this line of questioning, and when she asked M.S. if he had kissed his father’s penis, he answered, “No, I lick it.” M.S. further indicated that Silverman was the only person who did this to him, that it was a secret, and that he did not want to talk any more because he would get in trouble. By the end of the conversation, M.S., who had been coloring, was stabbing the paper with his pen and shaking his clenched fists.
{¶ 6} Batya’s mother then arrived unannounced at Batya’s apartment. Batya relayed to her what M.S. had said. They left M.S. with Farber and another friend of Batya’s and went back to Batya’s parents’ house. When Silverman *583 arrived, Batya told him about M.S.’s comments. Silverman did not respond to this information.
{¶ 7} After further conversation, the family decided not to call the police and that M.S. and his sister would remain in Indiana for several days while Silverman received help. However, Batya learned about a week later that the children had been returned to Silverman’s care, which was sooner than the family had originally planned. Soon thereafter, she contacted the Montgomery County children services agency and the West Carrollton police department.
{¶ 8} The police interviewed Silverman and his wife on June 13. During the interview, Silverman explained that because his wife was a stay-at-home mother, his only responsibility with the children was to bathe them. He told the detective that when he would get home from working at Chuck E. Cheese, he would take off his clothes and put on a robe — sometimes tying it, sometimes not. He and the kids would then take a bath together, and Silverman claimed that M.S. would climb over him like a “jungle gym.” On one occasion, Silverman claimed that M.S. pulled on Silverman’s penis in the bath, and Silverman responded by pulling on M.S.’s. Silverman also told the detective that one time when M.S. was climbing on him, M.S. bit Silverman’s penis while it was erect. When asked how many times Silverman had his mouth on M.S.’s genitals, Silverman said two or three times for about a second each time. When the interview was over, Silverman agreed to write down a statement.
{¶ 9} On July 21, 2006, the Montgomery County Grand Jury returned a three-count indictment against Silverman for rape and gross sexual imposition. Prior to the indictment, however, Silverman’s wife set fire to their residence. M.S. and K.S. were killed in the fire.[2]
{¶ 10} Because of M.S.’s death, the state moved to declare M.S. unavailable for trial and to admit into evidence the statements that he had made to Batya and Farber. After conducting a hearing pursuant to Evid.R. 807, the trial court granted the state’s motion and held that M.S.’s statements were admissible. The case proceeded to trial, and the jury returned a guilty verdict on only the gross-sexual-imposition charge. Silverman was sentenced to five years in prison.
{¶ 11} Silverman appealed to the Second District Court of Appeals, arguing that the trial court erred by admitting M.S.’s statement. Relying upon this court’s decision in State v. Said (1994), 71 Ohio St.3d 473, 644 N.E.2d 337, the appellate court reversed and overturned the conviction. State v. Silverman, 176 Ohio App.3d 12, 2008-Ohio-618, 889 N.E.2d 1034.
*584 {¶ 12} We accepted juiisdiction over the state’s appeal. State v. Silverman, 118 Ohio St.3d 1505, 2008-Ohio-3369, 889 N.E.2d 1024. The state how asks us to overrule Said in its entirety or, in the alternative, to limit its holding. Barring that, the state urges us to find that a child’s competence can be established through extrinsic evidence. Because we find that admissibility under Evid.R. 807 is not dependent on the child’s competence, we need not determine if competence can be established by extrinsic evidence.
Analysis
{¶ 13} We begin our analysis by examining Evid.R. 807.
{¶ 14} The rule provides an exception to the general exclusion of hearsay statements when a child under the age of 12 at the time of trial or hearing makes an out-of-court statement describing any sexual act that is performed on, with, or by the child. Evid.R. 807(A). For the statement to be admitted, the proponent of the statement must not be able to reasonably obtain the child’s testimony. Evid.R. 807(A)(2). It is axiomatic that the testimony is not reasonably obtainable when the child is deceased at the time of trial or hearing. See Evid.R. 807(B)(3)(a). Notably absent from the rule is any requirement that the child declarant be determined to be competent to testify before the statement is admitted. See Said, 71 Ohio St.3d at 480, 644 N.E.2d 337 (Resnick, J., concurring in part and dissenting in part) (“A competency hearing simply is not required by the plain terms of Evid.R. 807(A)”).
{¶ 15} In Said, we were confronted primarily with the trial court’s failure to record the hearing determining the competence of a five-year-old witness. The majority held that the failure to record the hearing was reversible error. Id., 71 Ohio St.3d at 475, 644 N.E.2d 337. Having found error, the majority should have stopped there. However, the majority sweepingly declared, without any authority, that “Evid.R. 807 clearly does not dispose of the need to find a child competent.” Id. at 476, 644 N.E.2d 337. Thus, in order to admit a child’s statement under Evid.R. 807 after Said, a trial court is required to find that the child was competent at the time he made the out-of-court statement. Id. at 477, 644 N.E.2d 337.
{¶ 16} The dissent in Said foresaw the problems with the majority’s rationale and noted that the competence requirement established by the majority “exceeded] the boundaries of Evid.R. 807.” Id., 71 Ohio St.3d at 479, 644 N.E.2d 337. It recognized that “[t]he effect of instituting the majority’s position * * * will be to preclude the admission of otherwise qualified out-of-court statements into evidence. For example, in those situations where the abused victim falls into a coma or dies at some point after making statements to a parent or therapist concerning the source of his or her abuse, the statements would not be admissible, given the child’s inability to attend a competency hearing. That result surely *585 defeats the obvious purpose for which Evid.R. 807 was adopted.” Id. at 480, 644 N.E.2d 337.
{¶ 17} The prescience of the dissent was borne out in State v. Meadows (Feb. 12, 2001), 4th Dist. No. 99CA2651, 2001 WL 803822. In that case, a jury convicted the defendant of murdering his three-year-old daughter. The state introduced testimony from several witnesses relating comments made to them by the daughter that the defendant had abused her. The defendant argued that the testimony was not admissible because the state-had failed to satisfy the requirements of Evid.R. 807 and the trial court had not determined whether the daughter was competent under Evid.R. 601 at the time she made her remarks.
{¶ 18} The court of appeals rejected that argument, finding that “Said * * * exclude[d] hearsay statements that Evid.R. 807 plainly contemplates are admissible.” Id. at *9. It therefore distinguished Said on the basis of the child’s death, finding that in this “situation, the reasoning of the Said Court deviates from the clear provisions of Evid.R. 807.” Id.
{¶ 19} The distinction that the Fourth District Court of Appeals drew in an attempt to evade Said is artificial and does not withstand close scrutiny in light of Said’s far-reaching holding. In Said, this court held in no uncertain terms that a competence hearing was required for the statements to be admissible under Evid.R. 807. It left no room for exceptions. If, in the case sub judice, we were to draw a distinction based on the child’s death, we would leave room to question whether Said continues to apply to children who are unavailable due to an infirmity or other medical condition, like a coma.
{¶ 20} We now hold that the better approach is to return to the plain text of Evid.R. 807. The rule says absolutely nothing about a child declarant’s competence. Despite the fact that the text of the rule lacks this requirement, Said imposed a judicially created rule that contravenes both the language and intent of Evid.R. 807.
{¶ 21} The Supreme Court of Washington recently confronted the same problem we do today. In State v. C.J. (2003), 148 Wash.2d 672, 63 P.3d 765, the court examined the relationship between its competence and child-hearsay-exception statutes. In doing so, the court implicitly overruled its prior decision in State v. Ryan (1984), 103 Wash.2d 165, 691 P.2d 197. See C.J., 148 Wash.2d at 694, 63 P.3d 765 (Sanders, J., dissenting). In Ryan, the court had held that a “declarant’s competency is a precondition to admission of his hearsay statements.” Id., 103 Wash.2d at 173, 691 P.2d 197. In reaching this conclusion, Ryan relied on the same authority as this court did in Said — 5 Wigmore on Evidence (Chadbourn Rev.1974) 255, Section 1424.
{¶ 22} In contrast, the court in C.J. found that the prerequisites of Washington’s child-hearsay-exception statute, Wash.Rev.Code 9A.44.120, like Evid.R. 807, *586 do not contain “any requirement that a declarant * * * be shown to have possessed testimonial competency at the time of the out of court statement.” Id., 148 Wash.2d at 683, 63 P.3d 765. That state’s Supreme Court determined that if the Washington legislature had intended the child to be competent when making the out-of-court statement, it would have included such language in the statute. Id. at 684, 63 P.3d 765. Furthermore, the court reasoned that a finding of incompetence “does not make the hearsay statements unreliable.” Id. at 685, 63 P.3d 765. Therefore, so long as the child’s out-of-court statement satisfies Wash.Rev.Code 9A.44.120’s requirements of reliability and corroboration, the statement is admissible if the child is unavailable. Id.
{¶ 23} Likewise, the Supreme Court of Colorado has recognized that there is a “flawed assumption that a determination of incompetency at the time of the hearing invariably establishes that the child’s statement was not reliable.” People v. Dist. Court of El Paso Cty. (Colo.1989), 776 P.2d 1083, 1088.[3] The issue before the court was whether the trial court properly excluded a four-year-old victim’s hearsay statements regarding her father’s alleged sexual abuse after determining that she was incompetent to testify as a witness.
{¶ 24} As does the Washington statute previously discussed and Evid.R. 807, Colo.Rev.Stat. 13-25-129 contains an exception from the hearsay exclusion for statements made by a child who has been abused. Under the Colorado law, the child’s out-of-court statement is admissible, when the child is unavailable to testify, if “[t]he [trial] court finds in a hearing * * * that the time, content, and circumstances of the statement provide sufficient safeguards of reliability.” Colo.Rev.Stat. 13-25-129(l)(a).
{¶ 25} The court in El Paso distinguished the purpose of a hearing on competence, which “determines only whether a child can accurately recollect and narrate at trial the events of abuse,” id., 776 P.2d at 1087, from the purpose of the hearsay-exception statute, which permits admission of the statement, without the need to determine competence, when the trial court determines that the “statement is supported by sufficient safeguards of reliability under [Colo.Rev.Stat.] 13 — 25—129(l)(a).” Id. at 1088. Thus, as long as the child’s statement satisfied those safeguards, it was admissible regardless of competence. Id. at 1090.
{¶ 26} The plain text of Evid.R. 807, the cogent dissent in Said, and the reasoning of C.J. and El Paso provide compelling reasons to find that the dicta in Said that judicially grafted the competence requirement onto Evid.R. 807 is improper and does not effectuate the rule. Even a cursory look at Evid.R. 807 *587 illustrates the high threshold a movant must meet for the statement to be admitted.[4]
{¶ 27} First, the court must consider a host of factors “surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child’s motive or lack of motive to fabricate, the child’s use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement.” Evid.R. 807(A)(1). Second, the child’s testimony must reasonably be unobtainable. Evid.R. 807(A)(2). Finally, there must be independent corroboration of the alleged acts. Evid.R. 807(A)(3).
{¶ 28} Applying these requirements to the case at hand, the trial court carefully reviewed the totality of the circumstances surrounding M.S.’s statements and appropriately determined that there were sufficient indicia of reliability and particularized guarantees of trustworthiness that made the statements as reliable as those admitted under Evid.R. 803 and 804. In particular, the trial court noted that M.S.’s initial statement was unsolicited and spontaneous; subsequent statements were consistent; M.S. was not coached or coerced, and the statements were given without input from Batya and Farber; M.S. recognized the nature of his statements when he refused to answer any more questions; the acts M.S. described are not expected to be within the knowledge of a child that age unless he had observed those acts or was the victim of them; and there was no evidence of a motive to lie about these allegations.
{¶ 29} Furthermore, the remaining criteria of Evid.R. 807 obviously were satisfied: M.S. was unavailable to testify; Silverman’s confession provided independent corroboration of the sexual acts; and the state provided proper notification of its intent to use the statement.[5] The statement, therefore, was properly admitted under Evid.R. 807.
{¶ 30} We are mindful that today’s holding entails limiting Said to the extent that Said requires that a child be found competent prior to admitting the statement under Evid.R. 807. Although the principle of “ ‘stare decisis is the bedrock of the American judicial system,’ ” State v. Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 22, quoting Westfield Ins. Co. v. Galatis, 100 *588 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, it is one “ ‘of policy and not a mechanical formula of adherence to the latest decision.’ ” Payne v. Tennessee (1991), 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720, quoting Helvering v. Hallock (1940), 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604.
{¶ 31} In Galatis, we recognized this tension and adopted a test for overruling precedent. However, “[considerations in favor of stare decisis are at their acme * * * where reliance interests are involved,” Payne, 501 U.S. at 828, 111 S.Ct. 2597, 115 L.Ed.2d 720. Individuals conducting their affairs must be able to rely on the law’s stability. See, e.g., United States ex rel. Fong Foo v. Shaughnessy (C.A.2, 1955), 234 F.2d 715, 719. Thus, Galatis must be applied in matters of substantive law.
{¶ 32} “[T]he opposite is true in cases * * * involving procedural and evidentiary rules,” Payne, 501 U.S. at 828, 111 S.Ct. 2597, 115 L.Ed.2d 720, because a procedural or evidentiary rule “does not serve as a guide to lawful behavior.” United States v. Gaudin (1995), 515 U.S. 506, 521, 115 S.Ct. 2310, 132 L.Ed.2d 444. In fact, “as to such rules, stare decisis has relatively little vigor.” Shaughnessy, 234 F.2d at 719; see also Williams v. Kidd (1915), 170 Cal. 631, 650, 151 P. 1 (“There is * * * nothing, of course, in the doctrine of stare decisis which can apply to a mere rule of evidence in which no one has a vested right”).
{¶ 33} The instant case addresses an evidentiary rule and procedure “that do[ ] not alter primary conduct.” Hohn v. United States (1998), 524 U.S. 236, 252, 118 S.Ct. 1969, 141 L.Ed.2d 242. Said’s expansive holding did not affect Silverman’s conduct in this matter, so overruling Said will not disrupt any reliance interest. See Pearson v. Callahan (2009), — U.S.-, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 (“Like rules governing procedures and the admission of evidence in the trial courts, [the] two-step protocol [established in Saucier v. Katz (2001), 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272] does not affect the way in which parties order their affairs. Withdrawing from Saucier’s categorical rule would not upset settled expectations on anyone’s part”). Galatis therefore is inapplicable because this matter involves an evidentiary rule, and so stare decisis plays a reduced role. Gaudin, 515 U.S. at 521, 115 S.Ct. 2310, 132 L.Ed.2d 444.
Conclusion
{¶ 34} For the foregoing reasons, we limit Said and hold that a hearsay statement of a child declarant can be admitted under Evid.R. 807 without a determination of the child’s competence to testify. We therefore reverse the judgment of the court of appeals and reinstate the trial court’s judgment.
Judgment reversed.
*589 Lundberg Stratton, O’Donnell, and Cupp, JJ., concur.
Moyer, C.J., and Pfeifer and Lanzinger, JJ., dissent.

. This included Silverman’s wife Heather, his three-month-old daughter, K.S., and his son, M.S.

. Heather Silverman has since pleaded guilty to two counts of murder and three counts of aggravated arson.

. Other states that adhere to this rationale include Florida, Perez v. State (Fla.1988), 536 So.2d 206, and Illinois, see People v. Hart (1991), 214 Ill.App.3d 512, 158 Ill.Dec. 103, 573 N.E.2d 1288 (abrogated on other grounds).

. A 1995 review of child-hearsay statutes revealed that of the 34 states that then allowed an exception to hearsay for child victims of abuse, Ohio was the only one that required that the declarant’s statement be as reliable as one admitted under other hearsay exceptions, that the child declarant be unavailable to testify, and that there be independent corroboration of the crime. Robert Marks, Note, Should We Believe the People Who Believe the Children?: The Need for a New Sexual Abuse Tender Years Hearsay Exception Statute (1995), 32 Harv.J. on Legis. 207, 238-240.

. Evid.R. 807(A)(2), (3), and (4).