[Cite as *State v. New Bey*, 2021-Ohio-1482.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 109424 |
| v. | : | |
| MIKIAL K. NEW BEY, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 29, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-621383-B

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Eben McNair, Assistant Prosecuting Attorney,
*for appellee.*

Myriam A. Miranda, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Mikial K. New Bey ("New Bey") appeals his convictions for child endangering and domestic violence. We affirm.

## I.  Background and Facts

{¶ 2}    On June 13, 2019, New Bey and his codefendant T.S. were charged in an eight-count indictment.  On December 6, 2019, New Bey was found guilty by jury on Counts 1-7 and by the trial court on Count 8. He was sentenced as follows:

Count 1    Endangering Children R.C. 2919.22(B)(1) — F-2 — 8 years
Count 2    Endangering Children R.C. 2919.22(B)(4) — F-2 — 8 years
Count 3    Endangering Children R.C. 2919.22(A) — F-3 — 36 months
Count 4    Endangering Children R.C. 2919.22(A) — M-1 — 6 months
Count 5    Endangering Children R.C. 2919.22(A) — M-1 — 6 months
Count 6    Endangering Children R.C. 2919.22(A) — M-1 — 6 months
Count 7    Endangering Children R.C. 2919.22(A) — M-1 — 6 months
Count 8    Domestic Violence R.C. 2919.25(A) — F-4 — 18 months

{¶ 3}    The sentences were run concurrently, for a total eight-year prison term.  New Bey was advised of postrelease control considerations.  T.S. pleaded guilty to one count of child endangering, a third-degree felony under R.C. 2919.22(A), and four counts of first-degree misdemeanor child endangering under R.C. 2919.22(A).  T.S. was sentenced to probation.

## II.  Trial

{¶ 4}    Testimony revealed that New Bey, a certified holistic health coach, taught various classes at several locations, and also provided medical transport services. T.S. testified that in 2016, New Bey sometimes transported T.S., her daughter, and three sons to medical and general community service appointments. In late 2016 and early 2017, T.S. and the children attended several of New Bey's health and martial arts classes.

{¶ 5}    At the time of the 2019 trial, the children were ages 13, 8, 7, and 5.

{¶ 6} T.S. testified that she and New Bey began dating in February 2017 and New Bey moved in with the family. T.S. struggled with mental and psychological conditions and began taking medication approximately six years prior to the relationship with New Bey. T.S. testified that New Bey withheld her medication during the relationship.

{¶ 7} T.S. began to notice marks on the boys' bodies after martial arts training and they began to lose weight. New Bey explained that the weight loss was due to dietary improvements, but the nutritional supplements that New Bey administered to the children made them ill. In New Bey's presence, the children indicated that their injuries were accidents, but son E.S. told T.S. that New Bey kicked him in the ribs and he fell on the concrete. Due to foundation issues with T.S.'s residence, T.S. stated the family moved in with New Bey the first week of July and moved again to Cleveland Heights in August 2017.

{¶ 8} T.S. stated that New Bey was very controlling of the family. New Bey monitored T.S.'s activities, physically abused her if she asked questions about the children, threatened to kill her, and bolted a door to prevent the family from leaving. The children suffered from physical abuse and starvation that New Bey labelled discipline related to martial arts and training. T.S. also testified about other forms of abuse by New Bey that included tying up the children in a closet, and offering food to the children and then knocking it out of their hands.

{¶ 9} In August 2017, T.S. was summoned to school due to suspected child abuse of the three oldest children. New Bey accompanied T.S. to the school where

they met with the principal, a teacher, and Brandi Stevens ("Stevens"), an intake worker at the Cuyahoga County Division of Children and Family Services ("CCDCFS") in the presence of police. CCDCFS removed the three children from the home and police accompanied the agency to pick up the younger child later that evening. T.S. temporarily lost custody of the children as the result of the August 2017 CCDCFS intervention but regained custody one year prior to her trial testimony.

{¶ 10} Cleveland Heights Policeman Roman Soyko ("Officer Soyko") responded to the suspected child abuse call from the school regarding the three children of T.S. Officer Soyko stated that the children were reluctant to speak with him. "They were very closed off like they were scared of everything and everyone, you know." (Tr. 182.)

{¶ 11} Officer Soyko stated that he observed the injuries to E.S., the youngest of the three children, that it appeared E.S. received the brunt of physical abuse:

> Well, let's start with his head. He had, it looked like old bruises, old cuts that were scabbed over. You know, for a six-year-old to have that amount of bruises and cuts on his face, especially — I mean, a six-year-old might or a five — five at the time, or whatever he was, you know, six-year-old, my five-year-old might fall down and scrape his head, but this was an overwhelming amount of bruising and cuts. * * *
>
> Also, when we took off his shirt and his pants, just to look at his legs and knees and — he had marks and bruises on his upper body. It looked like old scars. His knees were swollen significantly like — like an injury, like his knee got sprained or hit really hard with something. So both his knees were swollen.
>
> His wrists were swollen. I mean, it was overwhelming the amount of bruising, you know, and injuries that — I mean, I've never seen on a five-year-old so * * *.

(Tr. 183-184.)  Officer Soyko also reviewed photographs of the injuries for the jury.

{¶ 12}  In addition, Officer Soyko testified that the child appeared to be malnourished and he described the child's demeanor:

> He kept looking down.  He didn't want to talk to anyone.  And then I remember he was also wearing a diaper.  So at the age of five or six, you know, that's unusual.  But he — yeah, very skinny, malnourished.  And he actually told me a bunch of times that he's hungry, and he's not being fed properly at home so * * *.

(Tr. 186-187.)  The child also described the martial arts training from New Bey and stated that is how he received the injuries.

{¶ 13}  Officer Soyko did not recall observing apparent injuries or visible marks on the older children but testified that all three children had the same demeanor, which he described as follows:

> They — they were just looking down, wouldn't want to talk.  The oldest one was the one who talked the most.  She opened up, and she basically told me a lot of this stuff.
>
> But, yeah, all of them were skinny.  All of them told me they were hungry.  All of them told me they do not get fed.  So, yeah, we actually got them some food.  I think we got them a pizza so * * *.

(Tr. 187.)  Officer Soyko was wearing a bodycam during his interview with the children and testified to excerpts of the video.

{¶ 14}  CCDCFS intake worker Stevens testified that she was called to the school and informed by the principal that E.S. missed the first week of school and had expressed physical discomfort.  New Bey and T.S. were present for Stevens's meeting with the principal and teacher.  Stevens shared that the children referred to New Bey as their stepdad.

**{¶ 15}** Stevens met with the children individually. E.S. was very small for his age, had bruises on his face, arms, legs, and a "pretty bad limp." (Tr. 206.) E.S. remained in the room with Stevens while she made calls and kept hugging Stevens's leg. E.S. told Stevens that his injuries were from martial arts training by New Bey and "[h]e kept referring to the stick, a stick that they used with it. He said that's how his leg was injured with the stick. He was hit with a stick." (Tr. 213.) E.S. was also hungry and helped himself to a small yogurt container in the room that he ate with his hands.

**{¶ 16}** Stevens also met with the two older children, A.E. and I.E., regarding the household events and conduct. The children told Stevens that E.S. received most of the martial arts training. "Basically [the older children said] that [E.S.] was forced to do it. It wasn't something that he wanted to do. And they didn't understand why they were harder on him than the other kids." (Tr. 215.)

**{¶ 17}** Stevens had the children removed from the school by the police based on the information that she received. The police also accompanied Stevens to the children's residence that evening to pick up the youngest child. T.S. met them outside of the house with the child and New Bey was not in sight.

**{¶ 18}** Stevens was not the assigned case worker but visited the children when they were admitted to the hospital.

> I particularly wanted to see them because I had never seen a child physically so malnourished. And I just wanted to check up on them even though I was no longer responsible for them.

(Tr. 209.)

{¶ 19} Cleveland Heights Detective Mike Mathis ("Detective Mathis") testified to his experience with domestic violence patterns and profiles of abusers and victims. Detective Mathis was furnished with medical records as part of the investigation. The detective interviewed E.S. who was still hospitalized after the older siblings were released. An attempt to interview T.S. and New Bey at the house on September 7, 2017, was unsuccessful. The house appeared to be vacant and there was no furniture or other indication of occupancy.

{¶ 20} T.S. was located at a mental health facility and advised Detective Mathis that she still resided at the house. Attempts were made to meet with New Bey who would not return calls. New Bey and T.S. were subsequently charged.

{¶ 21} After the state rested, New Bey made a motion for judgment of acquittal under Crim.R. 29 focused on the two older children only who arguably had no visible bruises. New Bey also argued that the bifurcated charge on the domestic violence count stemmed from an incident that occurred more than ten years prior to the instant charge that did not involve a physical altercation. (Tr. 244.) The motion was denied. The journal entry of the prior domestic violence was admitted for the trial court's consideration only. (Tr. 249.)

{¶ 22} Defense witness Don Blake, Jr. ("Blake") testified that he met New Bey approximately seven years prior to trial. Blake, employed as a delivery driver at the time of trial, performed intake services for CCDCFS from 2015 to early June 2017. Blake also recorded New Bey's health lectures and classes and considered New Bey to be his instructor for martial arts and the holistic lifestyle. Blake knew T.S.

and her children through the classes in February 2017 and their relationship with New Bey and visited the Garfield Heights house where they resided.

{¶ 23} Blake never saw the children locked in their rooms or denied food. Blake stated that T.S. and the children moved in "with us" on Euclid Heights Boulevard briefly in late June 2017, and that Blake and New Bey helped T.S. and the children move to Cleveland Heights on August 3, 2017. (Tr. 258.) At that time, Blake recalled that "we all moved out." (Tr. 259.) T.S. moved to Cleveland Heights and New Bey moved to Euclid where he purportedly resided at the time of trial.

{¶ 24} Blake denied that New Bey ever stayed "more than a day or so" with T.S.'s family but subsequently retracted that statement. (Tr. 260, 268.) Blake visited the family's Cleveland Heights home a few times and recalled that a mark observed on E.S. was explained as the result of a fight between the children. Blake also testified that the children worked out with him for martial arts and that New Bey only taught Tai Chi and other low impact exercises. The trainings stopped when the family moved to Cleveland Heights.

{¶ 25} Blake testified he never saw E.S. in the condition depicted in the photographic evidence and he did not suspect abuse. Blake also said that he once witnessed T.S. choke the oldest daughter but did not report it because T.S. had Blake take her to the mental health ward. (Tr. 272.)

{¶ 26} New Bey testified that he met T.S. while employed as a driver with a transportation company that provided medical or community assistance transport

services. (Tr. 278.) New Bey was also self-employed as a holistic health and food service coach and possesses several certifications.

{¶ 27} New Bey stated that he has resided in his "primary house" in Euclid, Ohio, since 2001. (Tr. 284.) New Bey explained that he, Blake, and other business owners cooperatively performed business operations at a house on Euclid Heights Boulevard and allowed T.S. and her family to stay there briefly in late June. New Bey denied that he taught martial arts or self-defense but instead focused on mindfulness, meditation, yoga poses, and Tai Chi movements. (Tr. 282.)

{¶ 28} New Bey denied the allegations of physical abuse of the children and that he was ever romantically involved with T.S. He and Blake assisted T.S. with the family's August 2017 move to Cleveland Heights and occasionally he and Blake would go to the house to perform yardwork. New Bey was aware only of a single mark on E.S. that T.S. explained was due to a scuffle in the park with E.S.'s brother.

{¶ 29} New Bey renewed his Crim.R. 29 motion; it was denied. New Bey appeals his convictions. New Bey generally denied the allegations and argues that: (1) the children did not testify, (2) T.S. had not been taking her mental health medications; (3) the police did not testify that barriers were in the house; (4) police and CCDCFS did not testify that the children claimed abuse by New Bey; (5) New Bey's friend Blake who was employed by CCDCFS for a portion of the cited time period did not observe abuse; and (6) T.S. is the sole source of the evidence against him.

## III. Assignments of Error

{¶ 30} New Bey assigns five errors:

I.   The trial court erred when it failed to give the jury instruction concerning codefendant testimony under R.C. 2923.03(D), thereby denying appellant his right to a fair trial and his right to due process.

II.  Appellant was denied effective assistance of counsel.

III. The trial court erred when it allowed the state witnesses to repeat the statements of the minor children without making the appropriate findings as required by Evid.R. 807, thereby denying appellant the right to a fair trial and his right to due process.

IV.  The trial court erred when it allowed impermissible comments to be made by the State during opening statements, thereby denying appellant his right to a fair trial.

V.   Appellant's convictions are against the manifest weight of the evidence.

## IV. Discussion

{¶ 31} Although we begin our analysis with the first assigned error, we elect to address the errors out of order for efficiency.

### A. R.C. 2923.03(D) Codefendant Jury Instruction

{¶ 32} New Bey argues that the trial court erred by not giving the jury instruction regarding codefendant testimony under R.C. 2923.03(D). New Bey's counsel did not request a jury instruction, so all but plain error is waived. *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 15.

> Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. However, an error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison,* 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372

N.E.2d 804 (1978). "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Long* at 97.

*State v. Bouie*, 8th Dist. Cuyahoga No. 108095, 2019-Ohio-4579, ¶ 42.

**{¶ 33}** "A trial court's decision on jury instructions is treated with deference, and an appellate court will not reverse absent an abuse of discretion." (Citations omitted.) *State v. Malone*, 8th Dist. Cuyahoga No. 101305, 2015-Ohio-2150, ¶ 44. An abuse of discretion exists where the trial court acts in an unreasonable, arbitrary, or unconscionable manner. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 34}** New Bey is correct that R.C. 2923.03(D) provides that a jury must be instructed as set forth in the section where an alleged accomplice is involved. "The purpose of this instruction is to inform the jury that the testimony of an accomplice is inherently suspect and must be 'viewed with suspicion and weighed with caution.'" *State v. King*, 8th Dist. Cuyahoga No. 99319, 2013-Ohio-4791, ¶ 58, quoting *State v. Hall*, 8th Dist. Cuyahoga No. 2013-Ohio-2900, citing *State v. Bell*, 8th Dist. Cuyahoga No. 97123, 2012-Ohio-2624, ¶ 37.

**{¶ 35}** As this court has previously stated:

we look to three factors to determine whether a trial court's failure to give the accomplice instruction constitutes plain error under Crim.R. 52(B):

(1) whether the accomplice's testimony was corroborated by other evidence introduced at trial; (2) whether the jury was aware from the accomplice's testimony that he benefitted from agreeing to testify against the defendant; and/or (3) whether the jury was instructed generally regarding its duty to evaluate the credibility of the witnesses and its province to determine what testimony is worthy of belief.

*State v. Kamleh*, 8th Dist. Cuyahoga No. 97092, 2012-Ohio-2061, ¶ 38, citing *State v. Woodson*, 10th Dist. Franklin No. 03AP-736, 2004-Ohio-5713, ¶ 18; *State v. Bentley*, 11th Dist. Portage No. 2004-P-0053, 2005-Ohio-4648, ¶ 58; *State v. Jones*, 4th Dist. Scioto No. 10CA3366, 2011-Ohio-1108, ¶ 30.

{¶ 36} In the instant case, the testimony of the state's witnesses and medical records corroborated the mistreatment of the children. Thus, the first element has been established. The second element was established by T.S.'s testimony regarding her guilty plea:

Counsel: And you got probation?

T.S: Yes.

Counsel: Okay. Some of those charges were pretty serious, weren't they?

T.S.: Yes.

Counsel: That you pled to, correct?

T.S. Yes.

Counsel: So you pled to endangering children?

T.S. Yes.

Counsel: You pled to another kind of endangering children, correct?

T.S.: Yes.

Counsel: You pled to another count of endangering children, correct?

T.S.: Yes.

Counsel: And you pled to another charge of endangering children, correct?

T.S.:       Yes.

Counsel:    That's six.  And the seventh one is endangering children also, correct?

T.S.:       Yes.

Counsel:    The latters [sic] being misdemeanors and the one being a felony three. That was explained to you when you pled, correct?

T.S.        Yes.

Counsel:    All right.  And basically, the date of the offenses are all listed as August 30, 2017, correct?

T.S.:       Yes.

            * * *

Counsel:    All right.

(Tr. 139-140.)

{¶ 37}  For the third and final element, the trial court instructed the jury about credibility and the jury's duty to weigh the evidence.

> You are the sole judges of the facts and the credibility of the witnesses and the weight to be given to the testimony of each witness.

> To weigh the evidence, you must consider the credibility or believability of each person testifying.  You will apply the tests for truthfulness which you apply in your daily lives.  In determining the credibility of the witnesses, you should consider the interest or bias the witness has in the outcome of the verdict; his appearance, manner, and demeanor while testifying before you; candor and frankness; the consistency of his testimony with other known facts in the case; accuracy of memory or inaccuracy of memory; intelligence or lack thereof; the reasonableness of the testimony; the opportunity the witness had to see or hear or know the truth of the facts and circumstances concerning the things to which he has testified; and any and all other facts and circumstances surrounding the testimony which in your judgment would add or detract from the credibility and weight of the testimony.

Applying these tests you will assign to the testimony of each witness such weight as you deem proper. You are instructed that you are not bound to believe something to be a fact simply because it was testified to by a witness who was under oath. You may believe all, part or none of a witness's testimony.

The defendant testified as a witness in this case. You will weigh his testimony in the same manner as you weigh the testimony of other witnesses who appeared in the case.

Just because he is the defendant is no reason for you to disregard and set aside his testimony. And you will give his testimony the weight it is entitled to receive taking into consideration his interest in the outcome of the case and apply to his testimony the same rules that you will apply to the testimony of all other witnesses who appeared in the case.

It is for you to determine what weight you will give the testimony of any witness who appeared in this case.

(Tr. 300-302.)

{¶ 38} "We find that any error by the court in failing to give an accomplice instruction did not rise to the level of plain error." *Kamleh*, 8th Dist. Cuyahoga No. 97092, 2012-Ohio-2061, ¶ 38.

{¶ 39} The first assignment of error is overruled.

## B.     Evid.R. 807(C)

{¶ 40} In the third assignment of error, New Bey argues that Evid.R. 807(C) requires that the trial court make specific findings of fact to allow the admission of statements of children under the age of 12 to describe acts of violence or abuse. New Bey offers that defense counsel should have objected to the hearsay testimony regarding statements by the 13-year-old and the statements by the other children.

{¶ 41} We review the issue for plain error because no objection was voiced at trial. We reiterate that the children were ages 13, 8, 7, and 5 at the time of trial.

New Bey's convictions are for counts relating to E.S. who was 7 years old at the time of trial.

> **{¶ 42}** Evid.R. 807 serves as an exception to the
>
> general exclusion of hearsay statements when a child under the age of 12 at the time of trial or hearing makes an out-of-court statement describing any act or attempted act of physical harm directed against the child's person.
>
> In order for the statement to be admitted, the proponent of the statement must not be able to reasonably obtain the child's testimony. Evid.R. 807(A)(2).

*State v. Day*, 8th Dist. Cuyahoga No. 108435, 2020-Ohio-5259, ¶ 54.

> **{¶ 43}** Also,
>
> [n]otably absent from the rule is any requirement that the child declarant be determined to be competent to testify before the statement is admitted. *See* [*State v.*] *Said*, 71 Ohio St.3d [337] at 480, 644 N.E.2d 337 [(1994)] (Resnick, J., concurring in part and dissenting in part) ("A competency hearing simply is not required by the plain terms of Evid.R. 807(A)").

*State v. Silverman*, 121 Ohio St.3d 581, 2009-Ohio-1576, 906 N.E.2d 427, ¶ 14.

Clearly, by its own terms, where the statement is not hearsay, Evid.R. 807 does not apply.

> **{¶ 44}** In addition a hearing under Evid.R. 807:
>
> is triggered by compliance with the notice requirement. Evid.R. 807, Staff Notes ("[t]he pre-trial notice requirement is intended to alert opposing parties to the possible use of this exception, which in turn should trigger a request for an out-of-court hearing as required by Evid.R. 807(C)").

*In re S.P.*, 11th Dist. Lake Nos. 2011-L-038 and 2011-L-039, 2011-Ohio-4696, ¶ 72.

{¶ 45} New Bey references transcript pages "(Tr. 118, 119, 144, 187, 193, 213, [and] 214)" that contain testimony by T.S., the police officer, and the social worker but does not recite the relevant content. Thus, we first point out that an appellate court is not required to develop a party's argument or "to search the record for evidence to support an appellant's argument as to any alleged error." *Rodriguez v. Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 7.

{¶ 46} A review of the record reflects that objections were posed and sustained to testimony that attributed statements to the children, and the record contains sufficient additional admissible evidence of the condition of the children and the source of the alleged abuse to render any error harmless. *In re S.*P. at ¶ 73.

{¶ 47} To the extent objections were not posed, our review does not support that New Bey's claims rise to the level of plain error. New Bey has not presented evidence under this argument to support that "but for the error, the outcome of the proceedings would have been different." *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61.

{¶ 48} The third assigned error is overruled.

## C. Prosecutorial Comments during Opening Statements

{¶ 49} New Bey argues under the fourth assigned error that the assistant prosecuting attorney made impermissible comments during opening arguments regarding physical, emotional, and psychological abuse by New Bey against T.S.

> Opening statements are not evidence. Rather, they are an outline of the case to be presented and are intended to give the factfinder a general idea of what each side expects the evidence to show. *State v. Wilson*, 1st Dist. Hamilton No. C-000670, 2002-Ohio-1854, ¶ 13.

> Opening statements often serve to state the party's theory of the case. *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223, ¶ 24 (8th Dist.).
>
> Counsel should be afforded latitude by the trial court in making an opening statement. *Columbus v. Hamilton*, 78 Ohio App.3d 653, 657, 605 N.E.2d 1004 (10th Dist.1992), citing *Maggio v. Cleveland*, 151 Ohio St. 136, 84 N.E.2d 912 (1949), paragraph two of the syllabus. However, opening statements should not include matters that attempt to influence or sway the jury by making statements that counsel knows will not be supported by competent or admissible evidence. *Maggio* at 140-141.

*State v. Wuensch*, 2017-Ohio-9272, 102 N.E.3d 1089, ¶ 33-34 (8th Dist.).

**{¶ 50}** T.S. testified to the abuse at trial. We do not find that the assistant prosecuting attorney made statements that were unsupported and inadmissible.

**{¶ 51}** The fourth assignment of error lacks merit.

**D.    Manifest Weight**

**{¶ 52}** The fifth challenge is to the manifest weight of the evidence.

> A challenge to the manifest weight of the evidence questions whether the state has met its burden of persuasion. *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. When considering a claim that a conviction is against the manifest weight of the evidence, this court sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The weight-of-the-evidence standard "addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387.

*In re D.C.*, 8th Dist. Cuyahoga No. 102165, 2015-Ohio-4367, ¶ 13.

**{¶ 53}** The statements by the victims, T.S., police, social worker, and principal, along with the medical evidence support the charges in this case. Based on a thorough examination of the record, this court cannot say that the "jury clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 54} The fifth assignment of error is overruled.

### E.   Ineffective Assistance of Counsel

{¶ 55} In New Bey's second assignment of error, he argues that counsel was ineffective for failure to:  (1) request an accomplice jury instruction; (2) request a competency hearing for T.S.; (3) object to prejudicial comments by T.S.; (4) object to leading questions by the state; (5) demand a hearing under Evid.R. 807 and object to hearsay; (6) properly question or challenge state witnesses; (7) object to the prosecution's comments or bad acts testimony; and (8) give a cohesive closing argument.  New Bey also argues that the cumulative effect of counsel's deficiencies warrants reversal.

{¶ 56} To establish a claim for ineffective assistance of counsel, New Bey must show his trial counsel's performance was deficient, and that the deficient performance prejudiced the defense so as to deprive New Bey of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).  To establish prejudice, New Bey must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

{¶ 57} "In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance." *Id.* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69. Thus, "[t]rial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel." *State v. Foster*, 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶ 58} Additionally, the failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial. *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 37. In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. *Id.* at 689.

{¶ 59} Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

### 1. Competency Hearing

{¶ 60} New Bey argues that defense counsel should have requested a competency hearing for T.S. based on Evid.R. 601, although no case law is cited to support the argument, and the state did not counter the argument. Evid.R. 601(a), prior to its amendment effective July 1, 2020, provided:

Every person is competent to be a witness except:

(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.

*Silverman*, 121 Ohio St.3d 581, 2009-Ohio-1576, 906 N.E.2d 427, at ¶ 43. New Bey specifies that the evidence of T.S.'s mental challenges include that T.S. was hospitalized at the time that she was located by police, her mental illness history, and her testimony that New Bey withheld her medications for four months that caused her to "tap out of reality." (Tr. 128.)

{¶ 61} We observe that:

"'A person, who is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind.'" [*State v. Bradley*, 42 Ohio St.3d] at 140-141, [538 N.E.2d 373 (1989)], quoting *State v. Wildman*, 145 Ohio St. 379, 61 N.E.2d 790 (1945), paragraph three of the syllabus.

Moreover, competency under Evid.R. 601(A) contemplates several characteristics: (1) the individual must have the ability to receive accurate impressions of fact; (2) the individual must be able to accurately recollect those impressions; and (3) the individual must be able to relate those impressions truthfully. *State v. Grahek*, 8th Dist. Cuyahoga No. 81443, 2003-Ohio-2650, ¶ 25, citing *State v. Said*, 71 Ohio St.3d 473, 644 N.E.2d 337 (1994).

*State v. Conner*, 8th Dist. Cuyahoga No. 99557, 2014-Ohio-601, ¶ 33-34

{¶ 62} We do not find that, based on the record, counsel was ineffective in this regard.

### 2. Prejudicial Comments

{¶ 63} T.S. referred to New Bey as a "monster" during her testimony. (Tr. 129, 165.) However, T.S. immediately added to the reference a description of New Bey's actions and the psychological impact on her children. We disagree with New Bey's position that defense counsel's failure to object could not have been part of a defense strategy. Counsel may have, for example, determined that the nature of the charges required deftly dealing with the codefendant and mother of the children.

{¶ 64} We do not find that New Bey has "overcome the presumption that, under the circumstances, the challenged action might be considered strong trial strategy." *State v. Pridgett*, 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, ¶ 36, quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

### 3. Leading Questions

{¶ 65} Here New Bey argues that the prosecutor was allowed to lead all of the witnesses and interject the state's narrative in the questions. "The Supreme Court has held that it is not the improper use of leading questions to direct one's attention to events or to matters on which testimony was already generated." *State v. Melton*, 8th Dist. Cuyahoga No. 87186, 2006-Ohio-5610, ¶ 19.

{¶ 66} Also,

Evid.R. 611(C) does not strictly forbid leading questions, but states "leading questions should not be used on the direct examination of a

witness except as may be necessary to develop his testimony." This exception is broad; it is within the trial court's discretion to allow the use of leading questions.

(Fn. omitted.) *Id.* at ¶ 18.

{¶ 67} This argument also lacks merit.

### 4. Evid.R. 807

{¶ 68} We addressed this challenge in our analysis of the third assigned error. As stated therein, the assigned error lacks merit; thus, counsel was not ineffective. Counsel's failure to perform a futile action "cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." *Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, at ¶ 37.

### 5. Questioning Methods and Inability to Give a Cohesive Closing Argument

{¶ 69} New Bey offers no case law to support these arguments but states that trial counsel failed to: (1) properly question witnesses; (2) object to statements by the state during opening arguments regarding New Bey's control over T.S.; and (3) give a cohesive closing argument. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674, quoting *Michel v. Louisiana*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 70} We do not find that the record reflects that counsel was ineffective.

### 6. Cumulative Error

{¶ 71} As for New Bey's claim that the cumulative effect of counsel's errors deprived him of a fair trial,

> The Ohio Supreme Court has recognized the doctrine of cumulative error. *See State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal. *Id.* at 196-197. *See also State v. Hunter*, 131 Ohio St. 3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. Moreover, "errors cannot become prejudicial by sheer weight of numbers." *State v. Hill*, 75 Ohio St.3d [195,] 212, 661 N.E.2d 1068.

*State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 64.

{¶ 72} Based on our disposition of the individual assigned errors and those detailed herein, we do not find that counsel was ineffective. "[W]here it is found that the trial court did not err, cumulative error is simply inapplicable." *Id.* at ¶ 66.

{¶ 73} The second assignment of error lacks merit.

## V. Conclusion

{¶ 74} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EMANUELLA D. GROVES, J., CONCUR